1   Robert W. Brower (SBN 94929)
    P.O. Box 20278
2   El Sobrante, CA  94820
    (510) 758-3188
3   combatlit@aol.com

4
    Ray T. Rockwell (SBN 78902)
5   Law Offices of Ray T. Rockwell
    2255 Morello Ave., Ste. 240
6   Pleasant Hill, CA  94523
    (925) 932-7785
7   ray@rtrlegal.com

8   Attorneys for Plaintiffs

9

10                  UNITED STATES BANKRUPTCY COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12

13
    In re:                                    Case No. 11- 45175 RLE
14
    WALTER J. NG and                          Chapter 11
15  MARIBEL NG, Debtors

16  _____/

17  JOHN McGUIRE and JANE McGUIRE,            Adversary No. _____
    DWIGHT DIXON COLLINS, individually,
18  and as Trustee of the Collins 2007 Revocable
    Trust, and as Trustee of the Collins Development
19  Co. Defined Benefit Pension Plan and 401(k)
    Profit Sharing Plan, and KATHLEEN D. COLLINS,    **COMPLAINT TO DETERMINE**
20  individually, and as trustee of the Collins 2007  **DISCHARGABILITY OF DEBTS**
    Revocable Trust, LINDA GRASSI and JOHN
21  SCOTT ALEGRIA, BERNARD WITTENBERG and        11 U.S.C. § 523(a)(2)(A),
    SUZANNE WITTENBERG, NANCY BERGERON,          11 U.S.C. § 523(a)(4), and
22  and JEANNE LENGSFELDER,                      11 U.S.C. § 523(a)(19).

23          Plaintiffs,

24
    vs.
25
    WALTER J. NG, individually, and
26  dba WALTER NG INVESTORS,

27          Defendant.

28  _____/

    Complaint to Determine Dischargeability of Debts                          Page 1

## PARTIES

1.     Plaintiffs, JOHN and JANE McGUIRE, husband and wife, are residents of Walnut Creek, California, and are tort claim creditors and creditor/investors in R.E. Loans, LLC, with Account No. MCG 015.

2.     Plaintiffs, DWIGHT DIXON COLLINS and KATHLEEN D. COLLINS, husband and wife, are residents of Angels Camp, California, and are tort claim creditors and creditor/investors in R.E. Loans, LLC, with Account Nos. COL 040 and COL 041.

3.     Plaintiffs, LINDA GRASSI and JOHN SCOTT ALEGRIA, husband and wife, are residents of Discovery Bay, California, and tort claim creditors and creditor/investors in R.E. Loans, LLC, and Mortgage Fund '08, LLC, with Account Nos. GRA 025 and 08 GRA 00.

4.     Plaintiffs, BERNARD WITTENBERG and SUZANNE WITTENBERG, husband and wife, are residents of Berkeley, California, and are tort claim creditors and creditor/investors in R.E. Loans, LLC, and Mortgage Fund '08, LLC, with Account Nos. WIT 010, 4 WIT 012, 08 WIT 05 and 084 WIT 06.

5.     Plaintiff, NANCY BERGERON, is a resident of Roseburg, Oregon, and a tort claim creditor and creditor/investor in R.E. Loans, LLC, and Mortgage Fund '08, with Account Nos. BER 050 and 08 BER 05.

6.     Plaintiff, JEANNE LENGSFELDER, is a resident of Berkeley, California, and a tort claim creditor and creditor/investor in R.E. Loans, LLC, and Mortgage Fund '08, with Account Nos. LEN 020 and 08 LEN 00.

7.     Defendant, WALTER NG, individually, and dba WALTER NG INVESTORS, a Debtor herein, is a resident of Walnut Creek, California. (Hereinafter, the "Defendant – Debtor.") At all times relevant herein, the Defendant – Debtor was a licensed California real estate broker acting as one of the managing members of B-4 Partners, LLC, one of the managing members of R.E. Loans, LLC, one of the managing members of The Mortgage Fund, LLC, one of the managing members of Mortgage Fund '08, and the Chairman of the Board of Directors of Bar-K, Inc.

///

**JURISDICTION**

8.    This adversary proceeding is brought in connection with the Defendant – Debtor's Case No. 45175 RLE under Chapter 11 of Title 11 of the United States Code now pending in this court. This court has jurisdiction over this proceeding under Title 11 of the United States Code, Section 523(c) and Title 28 of the United States Code, Sections 157(b) and 1334. This adversary proceeding is a "core proceeding" as provided in Title 11 of the United States Code, Section 157(b)(2)(I).

**FACTUAL BACKGROUND**

9.    Between 1985 and 2002, using their California real estate brokers licenses, the Defendant-Debtor and Bruce Horwitz, M.D., organized and created nine California limited partnerships. The Defendant-Debtor and Bruce Horwitz, M.D., were Co-Managing General Partners of the nine limited partnerships through B-4 Partners, another California limited partnership.

10.    Each limited partnership was open for membership for approximately 18 months, it then closed, and a new partnership was formed. The nine limited partnerships were:

       1.   Bar-K Mortgage Income Partnership I
       2.   R.E. LOANS 88
       3.   R.E. LOANS 90
       4.   R.E. LOANS 92
       5.   R.E. LOANS 94
       6.   R.E. LOANS 96
       7.   R.E. LOANS 98
       8.   R.E. LOANS 2000
       9.   R.E. LOANS 2002

11.    The partnerships were in the business of pooling the limited partners' money, investing it in loans secured by real property, and returning the profit to the limited partners as either periodic payments from the interest earned from the borrowers, or lump sums when the loan(s) were paid off by the borrowers.

12.    The California Department of Real Estate regulated the operation of the nine limited

partnerships.

13.   In 2001, on the advice of their legal counsel, the managing general partners decided to close all the limited partnerships and create a new limited liability company.  They sought and obtained a permit from the California Department of Corporations to sell membership interests ("shares") as securities to California residents.  The new limited liability company was called R.E. Loans, LLC.

14.   The Defendant-Debtor and his Co-Managing General Partner, Bruce Horwitz, M.D., would continue in their management role as co-managing members of B-4 Partners, LLC, the managing member of R.E. Loans, LLC.

15.   Shares in R.E. Loans were $1.00 each, with a minimum subscription of $20,000.  Limited partners in the nine limited partnerships were offered the opportunity to transfer their capital account in the limited partnership for shares, dollar for dollar, in R.E. Loans, LLC.

16.   Because a majority of the limited partners elected to use their capital accounts to buy shares, the limited partnerships effectively merged into R.E. Loans, LLC.

17.   According to the cover page of the Offering Circular, R.E. Loans, LLC, membership in R.E. Loans, LLC, was restricted: "**FOR CALIFORNIA RESIDENTS ONLY**."

18.   This restriction was established to limit the sale of shares in R.E. Loans, LLC, to California residents thereby keeping the business entirely within intrastate commerce.  With that intrastate commerce business plan, the securities sold by the Defendant-Debtor and his co-managing member, Bruce Horwitz, M.D., would be exempt from registration with the United States Securities and Exchange Commission.

19.   The sale of membership shares in R.E. Loans, LLC, was, however, not exempt from registration for two reasons.

20.   First, from its inception in 2002, R.E. Loans, LLC, had more than 500 members and more than $10,000,000 in total assets.  Registration was therefore required under section 12(g)(1)(B) of the Securities and Exchange Act of 1934 (15 U.S.C. §78(g)(1)(B)) and Rule 12g-1 of the General Rules and Regulations Promulgated under the Securities Exchange Act of 1934 (17 CFR Part 240).

21. From its inception in 2002, therefore, the Defendant-Debtor and his co-managing member, Bruce Horwitz, M.D., sold unregistered and unregulated securities in violation of Federal law.

22. Violation of this law was egregious. By 2007, the fund had more than 2,000 investors and more than $650,000,000 in total assets.

23. Second, from its inception in 2002, the Defendant-Debtor knowingly sold shares directly to out-of-state investors losing the intrastate commerce exemption available under Section 3(a)(11) of the Securities Act of 1933 (15 U.S.C. §77(c)(11)). In addition, the Defendant-Debtor knowingly sold shares indirectly to out-of-state investors by "laundering" out-of-state investment money through "Walter Ng Investors," a bank account at Mechanics Bank in Walnut Creek and an investment account with the same name, "Walter Ng Investors," in R.E. Loans, LLC.

24. These sales violated section 5(a) and 5(c) of the Securities Act of 1933, which makes it unlawful "to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell" unregistered securities or "to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such [unregistered] security for the purpose of sale or for delivery after sale."

25. The Defendant-Debtor claims that he did not know the law or the rules, that he was not told about the law or the rules by any of his attorneys at Stein & Lubin, LLP (The Transamerica Pyramid, 600 Montgomery Street, 14th Floor, San Francisco 94111), not told about the law or the rules by any of his accountants, and not told about the law and the rules by any of his auditors, Armanino McKenna, LLP (12667 Alcosta Blvd., Suite 500, San Ramon, California 94583-4427).

26. On or about April 1, 2007, after (according to them) receiving their first notice of their violation(s) of Federal law in mid-March 2007, the Defendant-Debtor and his co-managing member, Bruce Horwitz, M.D., wrote and mailed a letter to all of the investors in R.E. Loans, LLC, except for those out-of-state investors who had invested, and were investing, laundered money through the Walter Ng Investors' Mechanics Bank account, for the purpose of notifying the investors in R.E. Loans, LLC, about these violations of Federal law.

27. In the April 1, 2007, letter, the Defendant-Debtor and his co-managing member, Bruce Horwitz, M.D., concealed the nature, the source and the extent of the problem from the investors.

Instead of telling the investors, including the Plaintiffs herein, that the Defendant-Debtor and his co-managing member, Bruce Horwitz, M.D., had violated the securities law and rules since the inception of the fund in 2002, the Defendant-Debtor and his co-managing member, Bruce Horwitz, M.D., stated: "Dear Investor, ¶ Since its inception in 2002 our mortgage pool, R.E. Loans, LLC, has been highly successful. Because of this unprecedented success, we are required to register the pool with the United States Securities Exchange Commission to comply with federal regulations. . . ."

28.    There was no mention of any violation of law and no offer of rescission in the April 1, 2007, letter. Instead, the Defendant-Debtor and his co-managing member, Bruce Horwitz, M.D., represented that the fund was temporarily closed to new investors and "[w]e cannot accept any new money from existing investors until we are registered."

29.    Closing the Fund meant that the Defendant-Debtor and his co-managing member, Bruce Horwitz, M.D., stopped the inflow of new investment money into the fund. But nonetheless, they promised, "Your withdrawals will not be affected."

30.    Stopping the inflow of new money from the sale of shares while continuing to honor withdrawals of principal was grossly negligent because the amount of withdrawals of principal and interest by the investors generally exceeded the amount of payments of principal and interest by the borrowers on their loans. In addition, the Defendant-Debtor and his two co-managing members, which now included the Defendant-Debtor's son, Kelly Ng, made substantial preferential payments of principal to their families and Kelly Ng's good friends. The Fund very quickly became illiquid.

31.    Unknown to the investors, including the Plaintiffs herein, over time, the Defendant-Debtor and his two co-managing members devised the following fraudulent scheme to deal with the liquidity problem. They would continue honoring withdrawal requests in order to create the illusion of liquidity for R.E. Loans, LLC, the closed fund, while creating a brand new mortgage pool investment fund, Mortgage Fund '08. The illusion of liquidity for the closed fund would be used to as a selling point to con investors, including some of the Plaintiffs herein, into investing their money into the new fund. Using various fraudulent tricks, money invested into the new

fund would be transferred into the closed fund in order to continue honoring withdrawals and maintain the illusion of liquidity. The illusion of liquidity of the closed fund thereby facilitated the con game; the Defendant-Debtor and his two co-managing members kept on encouraging new investments in the new fund.

32. The scheme evolved as follows: First, shortly after "closing" the fund on April 1, 2007, the Defendant-Debtor and his two co-managing members "advanced" $6,122,490.90 to the closed fund. These "advances" came from Bar-K, Inc., B-4 Partners, LLC, Barney Ng, the Defendant-Debtor's other son, the Defendant-Debtor individually, the "Walter Ng Investors" Mechanics Bank account (i.e., money from out-of-state investors who did not know the fund was closed) and ROR Ng Investments, LLC, a Nevada domiciled LLC. They also borrowed about $3,000,000 from Fremont Bank and Greater Bay Bank. Second, to repay these advances to themselves and the two banks and to continue the illusion of liquidity in the closed fund, the Defendant-Debtor and his two co-managing members entered into an <u>unauthorized</u> $50,000,000 line of credit with Wells Fargo Foothill. On the first draw from the line of credit, the Defendant-Debtor and his two co-managing members refunded their advances, paid the bank loans, and disbursed $11,914,282.38 to investors in R.E. Loans, LLC, the closed fund. In order to obtain the Wells Fargo Foothill line of credit, the Defendant-Debtor and his two co-managing members unilaterally agreed that the member-investors of the closed fund would "exchange" their shares, their equity interest in R.E. Loans, LLC, for "secured" promissory notes. Unknown to the investors, including the Plaintiffs herein, the "secured" promissory notes were in second place to the collateral for the Wells Fargo Foothill line of credit, turning the investors from owners of a LLC into second-place creditors of a LLC. Third, after soliciting investments in the new fund, the Defendant-Debtor and his two co-managing members transferred the first $40,129,801.42 invested in the new fund to the closed fund. Fourth, to obtain more cash to continue the illusion of liquidity, the Defendant-Debtor and his two co-managing members preferentially sold an important asset of the closed fund, a $13,000,0000 note, the "Austin Val Verde" note, to an investor, Len Epstein and his California Capital Group. The sale was accomplished by cashing out the investments of Len Epstein and his related entities, to the tune

of $6,000,000 thereby obtaining $7,000,000 of "new" money for the closed fund. Fifth, in order to further sustain the illusion of liquidity, the Defendant-Debtor and his two co-managing members arranged a substantial rewrite of another asset of the closed fund, a loan to the Eagle Springs Ranch development, with the rewrite of that loan as a sale to the new fund. As a result, as payments came into Mortgage Fund '08 from its investors, the Eagle Springs Ranch rewrite was "funded," and then those funds were immediately transferred from the new fund to the closed fund.

33.    The crowning moment of the con game came in June 2008 at a series of Investor Appreciation Dinners at the Silver Dragon Restaurant in Oakland when the Defendant-Debtor gave an investor appreciation speech to the investors, including Plaintiffs herein, soliciting new investments for the new fund: "Our new 1st loan pool, Mortgage Fund '08 opened in January 2008. We have $60 million invested and a strong portfolio of 1st mortgages. ... We have chosen the best loans in the best locations. ... Our investors are earning 8%. What is your savings rate? Give yourself a raise. We welcome new investors and new investments in Mortgage Fund '08."

34.    In addition to the fraudulent schemes alleged in Paragraph 31 through 33, inclusive, on 10/31/2007 the Defendant-Debtor embezzled $6,496,143.62 from 17 out-of-state investors by unilaterally closing their accounts in R.E. Loans and transferring those individual account balances to the Defendant-Debtor's Walter Ng Investors' R.E. Loans account, as follows:

| Date | Transaction | Amount |
|------|-------------|--------|
| 10/31/2007 | BOUGHT SHARES | 178,018.39 |
| 10/31/2007 | BOUGHT SHARES | 73,266.44 |
| 10/31/2007 | BOUGHT SHARES | 101,251.39 |
| 10/31/2007 | BOUGHT SHARES | 1,079,356.26 |
| 10/31/2007 | BOUGHT SHARES | 1,510,144.43 |
| 10/31/2007 | BOUGHT SHARES | 45,702.45 |
| 10/31/2007 | BOUGHT SHARES | 2,804,658.61 |
| 10/31/2007 | BOUGHT SHARES | 79,843.70 |
| 10/31/2007 | BOUGHT SHARES | 116,654.93 |
| 10/31/2007 | BOUGHT SHARES | 65,273.37 |
| 10/31/2007 | BOUGHT SHARES | 191,491.77 |
| 10/31/2007 | BOUGHT SHARES | 823.97 |
| 10/31/2007 | BOUGHT SHARES | 13,032.66 |
| 10/31/2007 | BOUGHT SHARES | 73,947.30 |
| 10/31/2007 | BOUGHT SHARES | 10,876.68 |
| 10/31/2007 | BOUGHT SHARES | 100,142.67 |

35. The Defendant-Debtor then mailed unsecured promissory notes to these 17 investors. In a November 21, 2007, "Dear Investor" cover letter, the Defendant-Debtor explained: "In the reorganization of R.E. Loans LLC, we have been advised that we must remove out-of-state Investors from the Fund. . . . As the original fund was intended for California Residents only we must remove non-California Residents as investors. ¶ We will exchange your shares as of November 1, 2007 in the existing R.E. Loans LLC for a promissory note personally signed and guaranteed by Walter Ng for a one year term."

## FIRST CLAIM FOR RELIEF
### For all Plaintiffs to Determine Dischargeability of All Debts
### under 11 U.S.C. 523(a)(19)

36. Plaintiffs incorporate Paragraphs 1 through 35, above, as if set forth verbatim herein.

37. By selling unregistered securities when the membership in R.E. Loans, LLC, exceed 500 members and the total assets exceeded $10,000,000, the Defendant-Debtor violated Federal securities law and a regulation or order issued under such Federal securities laws.

38. Pursuant to Title VIII of the Sarbanes-Oxley Act, the Corporate and Criminal Fraud Accountability Act of 2002, 11 U.S.C section 523(a)(19) states:

> (a) A discharge under section 727, 1141, 1228 (a), 1228 (b), or 1328 (b) of this title does not discharge an individual debtor from any debt—
>
> (19) that—
>
> (A) is for—
>
> (i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or
>
> (ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and
>
> (B) results, before, on, or after the date on which the petition was filed, from—
>
> (i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;

Case: 11-04234   Doc# 1   Filed: 08/04/11   Entered: 08/04/11 14:55:17   Page 9 of 28

1  (ii) any settlement agreement entered into by the debtor; or

2  (iii) any court or administrative order for any damages, fine, penalty, citation,
3  restitutionary payment, disgorgement payment, attorney fee, cost, or other
   payment owed by the debtor.

4

5  39.    Plaintiffs, and each of them, request a judicial determination in the form of an order from

6  this court that the Defendant-Debtor violated Federal securities law and a regulation or order

7  issued under such Federal securities laws by selling unregistered securities when the membership

8  in R.E. Loans, LLC, exceed 500 members and the total assets exceeded $10,000,000, and then a

9  judgment for damages, as a non-dischargeable debt, in the amount of each Plaintiff's out-of-

10 pocket investment in R.E. Loans, LLC, as follows:

11
| | |
|---|---|
12 | JOHN and JANE McGUIRE | $193,623.58 |
   | DWIGHT DIXON COLLINS | |
13 | and KATHLEEN D. COLLINS | $347,874.27 |
   | LINDA GRASSI | |
14 | and JOHN SCOTT ALEGRIA | $3,585.02 (account balance) |
15 | BERNARD WITTENBERG | |
   | and SUZANNE WITTENBERG | $248,506.82 |
16
17 | NANCY BERGERON | $201,262.00 |
   | JEANNE LENGSFELDER | $200,000.00 |

18

19                          **SECOND CLAIM FOR RELIEF**
                 **For all Plaintiffs to Determine Dischargeability of All Debts**
20                          **under 11 U.S.C. 523(a)(19)**

21

22 40.    Plaintiffs incorporate Paragraphs 1 through 35, above, as if set forth verbatim herein.

23 41.    By directly selling membership shares to investors who were not California residents and

24 by indirectly selling membership shares to investors who were not California residents through

25 the "Walter Ng Investors" Mechanics Bank account, and by doing so and by using the mail or

26 other means of transportation or communication in interstate commerce, the Defendant-Debtor

27 violated Federal securities law and a regulation or order issued under such Federal securities

28 laws.

42. Pursuant to Title VIII of the Sarbanes-Oxley Act, the Corporate and Criminal Fraud Accountability Act of 2002, 11 U.S.C section 523(a)(19) states:

> (a) A discharge under section 727, 1141, 1228 (a), 1228 (b), or 1328 (b) of this title does not discharge an individual debtor from any debt—
>
> (19) that—
>
> (A) is for—
>
> (i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or
>
> (ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and
>
> (B) results, before, on, or after the date on which the petition was filed, from—
>
> (i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;
>
> (ii) any settlement agreement entered into by the debtor; or
>
> (iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

43. Plaintiffs, and each of them, request a judicial determination in the form of an order from this court that the Defendant-Debtor violated Federal securities law and a regulation or order issued under such Federal securities laws by directly selling membership shares to investors who were not California residents and by indirectly selling membership shares to investors who were not California residents through the "Walter Ng Investors" Mechanics Bank account, and by doing so and by using the mail or other means of transportation or communication in interstate commerce, and then a judgment for damages, as a non-dischargeable debt, in the amount of each Plaintiff's out-of-pocket investment in R.E. Loans, LLC, as follows:

| | |
|---|---|
| JOHN and JANE McGUIRE | $193,623.58 |
| DWIGHT DIXON COLLINS and KATHLEEN D. COLLINS | $347,874.27 |

| | |
|---|---|
| LINDA GRASSI and JOHN SCOTT ALEGRIA | $3,585.02 (account balance) |
| BERNARD WITTENBERG and SUZANNE WITTENBERG | $248,506.82 |
| NANCY BERGERON | $201,262.00 |
| JEANNE LENGSFELDER | $200,000.00 |

**THIRD CLAIM FOR RELIEF**
**For all Plaintiffs to Determine Dischargeability of All Debts**
**under 11 U.S.C. 523(a)(19)**

44.    Plaintiffs incorporate Paragraphs 1 through 35, above, as if set forth verbatim herein.

45.    Section 25401 of the Corporations Code of the State of California states: "It is unlawful for any person to offer or sell a security in this state or buy or offer to buy a security in this state by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."

46.    The facts alleged in Paragraphs 52 through 72, below, about an "exchange" of equity interests for a secured promissory note constitutes the sale of a security under Section 25401 of the Corporations Code of the State of California, and about the untrue statements of material facts and the omissions of material facts related thereto, constitutes one or more violations of Section 25401 of the Corporations Code of the State of California.

47.    On or about July 17, 2007, in order to solve the liquidity problem, alleged in Paragraph 30, above, that they had created, the Defendant-Debtor and his two co-managing members, and each of them, in their capacities as R.E. Loans, LLC, fund managers, entered into a $50,000,000 line of credit with Wells Fargo Foothill, LLC, a Delaware limited liability company. (Hereinafter, "Wells Fargo Foothill.")

48.    Plaintiffs are informed and believe that the Defendant-Debtor and his two co-managing members, and each of them, represented to Wells Fargo Foothill that this $50,000,000 line of credit would be used to fund loan commitments previously made by R.E. Loans, LLC, to its existing first mortgage borrowers, for example, for unreserved construction loan commitments,

Case: 11-04234    Doc# 1    Filed: 08/04/11    Entered: 08/04/11 14:55:17    Page 12 of 28

or for development entitlements on undeveloped land.

49. The Wells Fargo Foothill line of credit was secured. Plaintiffs are informed and believe that the Defendant-Debtor and his two co-managing members, and each of them, assigned as collateral some of the first mortgages held by R.E. Loans, LLC, to Wells Fargo Foothill at a ratio of 5:1, i.e., $250,000,000, as security for the $50,000,000 line of credit.

50. Plaintiffs are further informed and believe that on or about July 13, 2007, and pursuant to, or in anticipation of, the above-mentioned Loan and Security Agreement, Defendants, and each of them, agreed that, among other things, the inventory, equipment, chattel paper, books, records, and trade fixtures, together with all additions, substitutions, replacements, improvements and repairs to same, was also security, i.e., collateral, for the Wells Fargo Foothill line of credit.

51. This secured line of credit was obtained without notice to the members of R.E. Loans, LLC, including Plaintiffs herein, and the creation of the collateral was never fully disclosed.

52. On or about July 25, 2007, the Defendant-Debtor and his co-managing member, Bruce Horwitz, M.D., sent a letter to the members of R.E. Loans, LLC, including Plaintiffs herein. The July 25, 2007, letter was a report on the status of the company. In the letter, the Defendant-Debtor and his co-managing member, Bruce Horwitz, M.D., and each of them, intentionally concealed the millions of dollars of cash disbursements to preferred investors that drove R.E. Loans into illiquidity, intentionally concealed the resultant need to enter into the Wells Fargo Foothill $50,000,000 line of credit, intentionally concealed the assignment of the loan portfolio to secure the line of credit, and intentionally concealed the use of the funds draw on July 17, 2007, first draw of borrowed funds. Instead, the Defendant-Debtor and his co-managing member, Bruce Horwitz, M.D., and each of them, after much thought and deliberation, merely stated: "We will contact you shortly with the evolution of the Fund."

53. On or about August 31, 2007, after depleting most of the $50,000,000 line of credit and after assigning part of the loan portfolio to Wells Fargo Foothill, that the Defendant-Debtor and his two co-managing members, and each of them, sent a letter to the investors "to reassure you regarding your investment in R.E. Loans, LLC (the "*Fund*")." Unlike most or all of the letters sent to investors in the previous eight years, the Defendant-Debtor and his two co-managing

members' attorneys carefully crafted this letter. Called a "Company Update," the attorney-drafted letter revealed for the first time the existence of the Wells Fargo Foothill line of credit. The attorney-drafted letter stated: "The Fund and Manager have entered into a line of credit with a Wells Fargo affiliated lender to facilitate liquidity to meet additional Fund cash flow needs."

54.    The attorney-drafted letter omitted the important fact that that the Defendant-Debtor and his two co-managing members, and each of them, and each of them, had assigned the Fund's portfolio of first deeds of trust and other collateral to Wells Fargo Foothill, and falsely stated that the borrowed money was to facilitate liquidity. The Defendant-Debtor and his two co-managing members, and each of them, and each of them, did not facilitate liquidity with the Wells Fargo Foothill line of credit. Because the $43,624,663 received from Wells Fargo Foothill on July 17, 2007, was immediately and completely disbursed on July 17, 2007, when the fund was illiquid, the borrowed funds could not have facilitated liquidity. When the Defendant-Debtor and his two co-managing members, and each of them, sent the attorney-drafted "Company Update" to the members of R.E. Loans, LLC, including Plaintiffs herein, on or about August 31, 2007, the Defendant-Debtor and his two co-managing members, and each of them, and each of them, knew their representations about liquidity in the letter were false.

55.    The attorney-drafted "Company Update" also falsely represented to the members of R.E. Loans, LLC, including Plaintiffs herein, that the Defendant-Debtor and his two co-managing members, and each of them, needed to restructure the Fund. The letter falsely stated: "The growth of the Fund requires us to reorganize the Fund and the structure of your investment to achieve regulatory and operating efficiencies."

56.    On or about October 8, 2007, three months after the Wells Fargo Foothill line of credit was established, the R.E. Loans, LLC, investors, including Plaintiffs herein, were told about the proposed reorganization of R.E. Loans in a letter signed by the Defendant-Debtor and his two co-managing members, and each of them. The letter falsely stated that the proposed reorganization was required "[i]n order to achieve certain tax efficiencies and address federal regulatory requirements. . . ." As part of the proposed reorganization, the investors were asked to convert their membership equity interest in R.E. Loans, LLC, to that of a creditor of R.E. Loans, LLC, by

1  accepting a promissory note in the amount the investor had in the fund.

2  57.  The October 8, 2007, letter falsely stated:  "The Promissory Note will be secured by all the

3  assets of the Fund."

4  58.  The members of R.E. Loans, LLC, including Plaintiffs herein, received with the October 8,

5  2007, letter, a "Confidential Memorandum" dated October 2007, which was titled "R.E.

6  LOANS, LLC, REORGANIZATION PLAN AND NOTE PROGRAM."

7  59.  The "Confidential Memorandum" was supplied to the members of R.E. Loans, LLC,

8  including Plaintiffs herein, solely for their use in deciding whether to approve or disapprove the

9  reorganization of the Fund by exchanging their membership interest for a promissory note.

10  60.  Material statements in the "Confidential Memorandum" were, and are, false.  For example,

11  the "Confidential Memorandum" at pages 7 – 8 stated:

12  **Portfolio Leverage – Current Fund**

13  The Fund has authority to borrow capital from third party lenders.  As noted
14  in [the] Initial Offering Circular, *[repeated phrase omitted]* it is likely that
   most or all of the Fund's loan portfolio would be assigned to such lender as
15  security for the loan(s).  In borrowing these funds, the Fund may increase the
   yield to the Fund; however, leveraging the Fund's portfolio entails certain
16  risks and also entails possible adverse tax consequences through the
   generation of unrelated business taxable income (UBTI) for tax exempt
17  holders of Membership Interests.  *(See "Leveraging the Portfolio," "ERISA*
   *Considerations" and "Risk Factors--Risk of Leverage" in the Initial Offering*
18  *Circular)*.

19

20  61.  This material statement in the "Confidential Memorandum" was false because the Initial

21  Offering Circular, the First Published Offering Circular, the Second Published Offering Circular,

22  and the Third Published Offering Circular all disclaimed borrowing money from a third party

23  lender and each and every published, or unpublished, Offering Circular described a business plan

24  or model that anticipated R.E. Loans would generate adequate amounts of cash in the operation

25  of the mortgage pool so that a loan of cash from a third party lender would be unnecessary, and

26  not be reasonably expected by any potential investor in, or member of, R.E. Loans.

27  62.  In addition, the statement in Paragraph 60, above, was false because none of the published

28  Offering Circulars contained *"Leveraging the Portfolio,"* or *"Risk Factors--Risk of Leverage,"*

or the phrase "leveraging the portfolio."

63.   At the time this "Confidential Memorandum" was circulated, it was never made clear to the members of R.E. Loans, LLC, including Plaintiffs herein, that the loans in the "the Fund's loan portfolio," that "likely" "would be assigned to such lender" as security, had already been assigned to Wells Fargo Foothill under various Collateral Assignment of Mortgage and Loan Documents in July 2007, months earlier.

64.   At the time this "Confidential Memorandum" was being circulated, it was also never made clear to the investors that other collateral, also given as security for the Wells Fargo Foothill line of credit as alleged in Paragraph 50, above, had already been assigned to Wells Fargo Foothill in July 2007, months earlier.

65.   Thus, the proposed promissory note offered in exchange for a member's equity interest was essentially unsecured and not "secured by all the assets of the Fund," as stated in the October 8, 2007, cover letter sent to Plaintiffs.

66.   In a section entitled "Portfolio Loans - Current Fund," the "Confidential Memorandum" also falsely stated that "the Fund is authorized to make mortgage loans from . . . borrowed funds from third party lenders."

67.   In a section entitled "Fund Objectives – Current Fund" the "Confidential Memorandum" also falsely stated that the Fund made "loans secured by deeds of trust on real property located primarily in California."   The Defendant-Debtor and his two co-managing members, and each of them, and each of them, knew that more than 60% of Fund loans were secured by deeds of trust on properties located outside of California and that this was a violation of the provisions of the offering circulars.

68.   In a section entitled "Suitability Standards – Current Fund" the "Confidential Memorandum" falsely stated that membership interests in the Fund "were offered and sold exclusively to investors who were California residents and who met certain minimum standards of income and/or net worth."

69.   In a section entitled "Advantages of Owning the Fund's Debt Securities" the "Confidential Memorandum" stated that the Fund's obligation to pay Noteholders "will take priority over the

1  rights of the Manager and servicer to unpaid fees" without revealing that the Defendant-Debtor
2  and his two co-managing members, and each of them, had taken their fees and repaid their
3  advances from the July 17, 2007, first draw on the line of credit.
4  70.    In reliance on these false statements, the Defendant-Debtor's concealment of material facts,
5  and in reliance on the assurances of the Defendant-Debtor and his two co-managing members,
6  and each of them, that Plaintiffs' investments would be safe and secure, many investors,
7  including some of the Plaintiffs herein, voted to approve the reorganization of the Fund and to
8  exchange their membership interests for promissory notes.
9  71.    On or about November 15, 2007, the Defendant-Debtor and his co-managing member,
10  BRUCE HORWITZ, M.D., acting in their capacities as Managers of B-4 Partners, LLC, mailed a
11  "Dear Investor" letter, to Plaintiffs, and each of them, advising that their equity shares in R.E.
12  Loans had been exchanged for Secured Promissory Notes.
13  72.    An "Exchange Agreement," a "Secured Promissory Note," and a "Security Agreement"
14  were enclosed with the letter.  The Exchange Agreement was signed by the Defendant-Debtor as
15  Manager of R.E. Loans, LLC, and signed by his co-managing member, BRUCE HORWITZ,
16  M.D., as manager of B-4 Partners, LLC, as Managing Member of R.E. Loans, LLC, LLC, and as
17  "Attorney-In-Fact for the persons listed on Schedule A attached hereto."
18  73.    Pursuant to Title VIII of the Sarbanes-Oxley Act, the Corporate and Criminal Fraud
19  Accountability Act of 2002, 11 U.S.C section 523(a)(19) states:
20
21     (a) A discharge under section 727, 1141, 1228 (a), 1228 (b), or 1328 (b) of this
       title does not discharge an individual debtor from any debt—
22     (19) that—
23
       (A) is for—
24
25     (i) the violation of any of the Federal securities laws (as that term is defined in
       section 3(a)(47) of the Securities Exchange Act of 1934), any of the State
26     securities laws, or any regulation or order issued under such Federal or State
       securities laws; or
27     (ii) common law fraud, deceit, or manipulation in connection with the purchase
28     or sale of any security; and

1     (B) results, before, on, or after the date on which the petition was filed, from—

2     (i) any judgment, order, consent order, or decree entered in any Federal or State
3     judicial or administrative proceeding;

4     (ii) any settlement agreement entered into by the debtor; or

5     (iii) any court or administrative order for any damages, fine, penalty, citation,
    restitutionary payment, disgorgement payment, attorney fee, cost, or other
6     payment owed by the debtor.

7

8   74.   Plaintiffs, and each of them, request a judicial determination in the form of an order from

9 this court that the Defendant-Debtor violated California securities law and a regulation or order

10 issued under such California's securities laws by materially aiding in an "exchange" of equity

11 interests for a secured promissory note in violation of Section 25401 of the Corporations Code of

12 the State of California, as alleged herein, and then a judgment for damages, as a non-

13 dischargeable debt, in the amount of each Plaintiff's equity interest a the time of the purported

14 transfer as follows:

15   75.   Plaintiffs' JOHN and JANE McGUIRE's equity interest in Account No. MCG 015 at the

16 time of the purported transfer was $291,547.27.

17   76.   Plaintiffs' DIXON COLLINS and KATHLEEN COLLINS' equity interest in Account No.

18 COL 040 at the time of the purported transfer was $146,215.00.

19   77.   Plaintiff's, DIXON COLLINS, equity interest in Account No. COL 041 at the time of the

20 purported transfer was $146,215.00.

21   78.   Plaintiffs, LINDA GRASSI and JOHN SCOTT ALEGRIA, equity interest in Account No.

22 GRA 025 at the time of the purported transfer was $205,708.32.

23   79.   Plaintiffs' BERNARD WITTENBERG and SUZANNE WITTENBERG's equity interest

24 in Account No. WIT 010 at the time of the purported transfer was 285,016.43.

25   80.   Plaintiffs' BERNARD WITTENBERG's equity interest in Account No. 4WIT 012 at the

26 time of the purported transfer was 34,638.33.

27   81.   Plaintiff, NANCY BERGERON, equity interest in Account No. BER 050 at the time of the

28 purported transfer was $224,096.54.

82. Plaintiff, JEANNE LENGSFELDER, equity interest in Account No. LEN 020 at the time of the purported transfer was $212,442.21.

### FOURTH CLAIM FOR RELIEF
**For Linda Grassi and John Scott Alegria, Nancy Bergeron, Jeanne Lengsfelder
to Determine Dischargeability of All Debts under 11 U.S.C. 523(a)(4)**

83. Plaintiffs incorporate Paragraphs 1 through 35, above, as if set forth verbatim herein.

84. 11 U.S.C section 523(a)(4) states:

(a) A discharge under section 727, 1141, 1228 (a), 1228 (b), or 1328 (b) of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

85. Plaintiffs, LINDA GRASSI and JOHN SCOTT ALEGRIA, NANCY BERGERON, JEANNE LENGSFELDER, invested in Mortgage Fund '08 between December 3, 2007 and March 4, 2007, as follows:

| | |
|---|---|
| LINDA GRASSI and JOHN SCOTT ALEGRIA | $1,350,000.00 |
| NANCY BERGERON | $132,000.00 |
| JEANNE LENGSFELDER | $200,000.00 |

86. At the time that these investments were made in Mortgage Fund '08, R.E. Loans, LLC, was closed to "new" investment money, as alleged above in Paragraphs 27 through 29, inclusive.

87. The Defendant-Debtor and his son Kelly Ng, the co-managing member of Mortgage Fund '08, created a fraudulent scheme to transfer investments in Mortgage Fund '08 into R.E. Loans, LLC, the closed fund in which they, along with Bruce Horwitz, M.D., were co-managing members. The scheme was created to maintain the illusion of liquidity in the closed fund.

88. The scheme was described in a December 30, 2009, letter from the attorney for Barney Ng, the Defendant-Debtor's son, sent to the Defendant-Debtor as follows:

///

> "Once again, rather than acknowledge the illiquidity that their own mismanagement had caused, B-4 devised a scheme to transfer nearly $40 million from Mortgage Fund '08 to R.E. Loans between December 4th, 2007 and March 3, 2008. The funds from this transfer, as in the case of the LOC, were used to maintain the illusion of liquidity and provide payments to B-4's favored note holders at the expense of R.E. Loans."

89.  Further in his deposition, Bruce Horwitz, M.D., the Defendant-Debtor's co-manager of R.E. Loans, LLC, testified:

> Q.  Was it true that there was a $40 million transfer from Mortgage Fund '08 into R.E. Loans?
>
> A.  I don't know the exact numbers, but what happened was we were winding the fund down and we needed more money for investors [in] the fund.

90.  To record and bookkeep these transfers, the Defendant-Debtor took an existing R.E. Loans, LLC, account named "B-4 PARTNERS ADVANCE" and renamed it "MORTGAGE FUND '08 LLC." The transfers were entered in the "MORTGAGE FUND '08 LLC" account as follows:

| Date | Bought Shares | Total |
| --- | --- | --- |
| 12/4/2007 | 2,282,157.11 | 2,282,157.11 |
| 12/12/2007 | 2,404,911.86 | 4,687,068.97 |
| 12/12/2007 | 500,000.00 | 5,187,068.97 |
| 12/14/2007 | 5,253,590.84 | 10,440,659.81 |
| 12/19/2007 | 178,833.32 | 10,619,493.13 |
| 12/19/2007 | 27,532.33 | 10,647,025.46 |
| 12/19/2007 | 1,144,874.51 | 11,791,899.97 |
| 12/20/2007 | 188,000.00 | 11,979,899.97 |
| 1/4/2008 | 3,500,000.00 | 15,479,899.97 |
| 1/10/2008 | 5,500,000.00 | 20,979,899.97 |
| 1/14/2008 | 5,888,664.43 | 26,868,564.40 |
| 1/30/2008 | 1,773,730.18 | 28,642,294.58 |
| 2/1/2008 | 4,609,076.64 | 33,251,371.22 |
| 2/4/2008 | 1,700,000.00 | 34,951,371.22 |
| 2/7/2008 | 1,292,430.20 | 36,243,801.42 |
| 2/13/2008 | 950,000.00 | 37,193,801.42 |
| 2/20/2008 | 500,000.00 | 37,693,801.42 |
| 2/22/2008 | 336,000.00 | 38,029,801.42 |
| 2/28/2008 | 600,000.00 | 38,629,801.42 |
| 3/3/2008 | 1,500,000.00 | 40,129,801.42 |

Case: 11-04234    Doc# 1    Filed: 08/04/11    Entered: 08/04/11 14:55:17    Page 20 of 28

91. The transfer of $40,129,801.42, which included the investments of Plaintiffs herein, from Mortgage Fund '08 to R.E. Loans, LLC, in order to maintain the illusion of liquidity in R.E. Loans, LLC, was embezzlement as that term is defined in 11 U.S.C section 523(a)(4).

92. Plaintiffs, and each of them, herein request a judicial determination in the form of an order from this court that the Defendant-Debtor embezzled investments made in Mortgage Fund '08 through March 3, 2008, transferring them to R.E. Loans, LLC, in order to maintain the illusion of liquidity in R.E. Loans, LLC, and then a judgment for damages, as a non-dischargeable debt, in the amount of each Plaintiff's out-of-pocket investment in Mortgage Fund '08, as follows:

| | |
|---|---|
| LINDA GRASSI and JOHN SCOTT ALEGRIA | $1,350,000.00 |
| NANCY BERGERON | $132,000.00 |
| JEANNE LENGSFELDER | $200,000.00 |

### FIFTH CLAIM FOR RELIEF
**For Bernard and Suzanne Wittenberg, and Jeanne Lengsfelder
to Determine Dischargeability of All Debts under 11 U.S.C. 523(a)(4)**

93. Plaintiffs incorporate Paragraphs 1 through 35, above, as if set forth verbatim herein.

94. 11 U.S.C section 523(a)(4) states:

(a) A discharge under section 727, 1141, 1228 (a), 1228 (b), or 1328 (b) of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

95. Plaintiffs, BERNARD and SUZANNE WITTERBERG, made two investments in Mortgage Fund '08 on June 23, 2008, totaling $47,500.00.

96. Plaintiff, JEANNE LENGSFELDER, made two investments in Mortgage Fund '08 on May 28, 2008, and July 29, 2008, totaling $700,000.00.

97. At the time that these four investments were made in Mortgage Fund '08, R.E. Loans, LLC, was closed to "new" investment money, as alleged above in Paragraphs 27 through 29, inclusive.

98. The Defendant-Debtor and his son Kelly Ng, the co-managing member of Mortgage Fund

'08, created a fraudulent scheme to transfer "new" investments in Mortgage Fund '08 into R.E.

Loans, LLC, the closed fund in which they, along with Bruce Horwitz, M.D., were co-managing

members. The scheme was created to maintain the illusion of liquidity in the closed fund.

99. The scheme involved a rewrite of an R.E. Loans, LLC loan to Eagle Springs Ranch, LLC.

The loan from R.E. Loans, LLC, for $21,000,000 was not fully funded. Regardless, the

Defendant-Debtor and his two co-managers rewrote the loan with the new funding to come from

Mortgage Fund '08.

100. Using this scheme, the Defendant-Debtor and his son Kelly Ng, the co-managing member

of Mortgage Fund '08, transferred $13,900,000 of "new" investments from Mortgage Fund '08

into R.E. Loans, LLC, the closed fund in which they, along with Bruce Horwitz, M.D., were co-

managing members.

101. The transfers are recorded in a Bar-K, Inc., Incremental Funding Report as follows:

| Date | Amount Funded by Mortgage Fund '08 | Amount Paid to R.E. Loans |
|---|---|---|
| 6/2/2008 | 2,000,000.00 | 2,000,000.00 (6/3/2008) |
| 6/10/2008 | 2,000,000.00 | 2,000,000.00 |
| 6/16/2008 | 2,000,000.00 | 2,000,000.00 |
| 7/1/2008 | 2,000,000.00 | 2,000,000.00 |
| 7/22/2008 | 800,000.00 | 800,000.00 |
| 7/29/2008 | 1,800,000.00 | 1,800,000.00 |
| 7/31/2008 | 1,300,000.00 | 1,300,000.00 |
| 8/8/2008 | 1,000,000.00 | 1,000,000.00 |
| 8/22/2008 | 1,000,000.00 | 1,000,000.00 |

102. The transfer of $13,900,000.00, which included the four investments of Plaintiffs herein,

from Mortgage Fund '08 to R.E. Loans, LLC, in order to maintain the illusion of liquidity in

R.E. Loans, LLC, was embezzlement as that term is defined in 11 U.S.C section 523(a)(4).

103. Plaintiffs, and each of them, herein request a judicial determination in the form of an order

from this court that the Defendant-Debtor embezzled $13,900,000 of new investments in

Mortgage Fund '08 by transferring them into R.E. Loans, LLC, in order to maintain the illusion

of liquidity in R.E. Loans, LLC, and then a judgment for damages, as a non-dischargeable debt,

in the amount of $47,500.00, for Plaintiffs, BERNARD and SUZANNE WITTERBERG's out-

of-pocket investment in Mortgage Fund '08 and in the amount of $700,00.00, for Plaintiff, JEANNE LENGSFELDER's out-of-pocket investment in Mortgage Fund '08.

### SIXTH CLAIM FOR RELIEF
**For Plaintiffs Bernard and Suzanne Wittenberg, and Jeanne Lengsfelder**
**to Determine Dischargeability of All Debts under 11 U.S.C. 523(a)(4)**

104. Plaintiffs incorporate Paragraphs 1 through 35, 86 through 91, 97 through 102, above, as if set forth verbatim herein.

105. 11 U.S.C section 523(a)(2)(A) states:

(a) A discharge under section 727, 1141, 1228 (a), 1228 (b), or 1328 (b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

106. On or about June 2008, at one or more, Investor Appreciation Dinners at the Silver Dragon Restaurant in Oakland, California, the Defendant-Debtor made false representations with the specific intent of deceiving the attendees, including Plaintiffs herein, into making investments in Mortgage Fund '08.

107. The Defendant-Debtor's false representations, included the following:

The foundation of our company is the quality of our 1st mortgage portfolio.

In choosing the right loan investment our motto is safety 1st, safety 2nd, and safety 3rd. There is no reason to take a risk. We get a great return for you because we provide a special service for the Borrowers.

R.E. Loans continues to thrive. We have over 700 million dollars in assets and earned over $85 million in interest in 2007. We have over 2,500 accounts. We paid our investors 8.23% for the year 2007. We reorganized the Fund last year to improve the security of your investment and keep our

Case: 11-04234   Doc# 1   Filed: 08/04/11   Entered: 08/04/11 14:55:17   Page 23 of 28

operational expenses low. We appreciate all your cooperation and patience.

There have been some delays in meeting requests for capital withdrawal. This is only temporary and the problem is being solved. We apologize for any inconvenience.

Our new 1st loan pool, Mortgage Fund '08, opened in January 2008. We have $60 million invested and a strong portfolio of 1st mortgages. Our investors are earning 8%. What is your savings rate? Give yourself a raise. We welcome new investors and new investments in Mortgage Fund '08.

Our portfolio of 1st mortgages is strong. We produce all our own loans. We physically inspect each and every property we lend on. Equity and location protects our investments. We are a national lender with loans in 17 states. We have chosen the best loans in the best locations for our investments. We will succeed in this soft real estate economy.

We pledge all our experience of over 100 years to keep your money safe.

108. In reliance on these false representations, on June 23, 2008, Plaintiffs Bernard and Suzanne Wittenberg invested $47,5000 in Mortgage Fund '08 and on July 29, 2008, Plaintiff Jeanne Lengsfelder invested $200,000 in Mortgage Fund '08.

109. As a legal result of these false representations, Plaintiffs herein suffered damages as alleged in Paragraph 108, above.

**SEVENTH CLAIM FOR RELIEF**
**An Omnibus Claim For all Plaintiffs**
**to Determine Dischargeability of All Debts under 11 U.S.C. 523(a)(4)**

110. Plaintiffs incorporate Paragraphs 1 through 35, 86 through 91, 97 through 102, above, as if set forth verbatim herein.

111. 11 U.S.C section 523(a)(4) states:

> (a) A discharge under section 727, 1141, 1228 (a), 1228 (b), or 1328 (b) of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

112. This is an omnibus claim for all Plaintiffs, and each of them, for fiduciary fraud based upon allegations and causes of action previously made in Complaints filed in the Superior Courts of the State of California, copies of which are attached hereto as Exhibits, and incorporated herein by reference.

113. On or about September 8, 2009, Plaintiffs LINDA GRASSI and JOHN SCOTT ALEGRIA filed a First Amended Complaint in Case No. MSC 09-00998, in the Contra Costa County Superior Court. The Defendant-Debtor was named as a party defendant. The case was dismissed without prejudice on or about October 15, 2009.

114. A true and correct copy of the GRASSI/ALEGRIA First Amended Complaint is attached hereto attached as Exhibit No. 1.

115. Plaintiffs incorporate all of the allegations made in the First Cause of Action entitled "Ponzi Scheme - Fraud," the Third Cause of Action entitled "Fraud – Intentional Misrepresentation and False Promise," the Fourth Cause of Action entitled "Fraud - Concealment," and the Sixth Cause of Action entitled "Breach of Fiduciary Duty" of the GRASSI/ALEGRIA First Amended Complaint as if set forth verbatim herein.

116. On or about December 2, 2009, Plaintiffs JOHN AND JANE McGUIRE, filed a First Amended Complaint in Case No. RG 09-484704, in the Alameda County Superior Court. The Defendant-Debtor was named as a party defendant. The case as to the Defendant-Debtor was dismissed without prejudice on or about May 13, 2011. The case against Bruce Horwitz, M.D., the Defendant-Debtor's co-managing member of R.E. Loans, LLC, went to trial by a jury and on June 28, 2011, the jury returned a Special Verdict finding Bruce Horwitz, M.D., liable for fiduciary fraud.

117. A true and correct copy of the McGUIRE First Amended Complaint is attached hereto attached as Exhibit No. 2. It was modeled after the previously filed GRASSI/ALEGRIA First Amended Complaint.

118. Plaintiffs incorporate all of the allegations made in the First Cause of Action entitled

Case: 11-04234    Doc# 1    Filed: 08/04/11    Entered: 08/04/11 14:55:17    Page 25 of 28

1 "Breach of Fiduciary Duty," the Second Cause of Action entitled "Fraud – Intentional

2 Misrepresentation and False Promise," and the Third Cause of Action entitled "Fraud –

3 Concealment," of the McGUIRE First Amended Complaint as if set forth verbatim herein.

4 119. On or about December 2, 2010, Plaintiffs DWIGHT DIXON COLLINS and KATHLEEN

5 D. COLLINS, filed a First Amended Complaint in Case No. MSC 10-02950, in the Contra Costa

6 County Superior Court. The Defendant-Debtor was named as a party defendant. The case has

7 been stayed by an Order of the Court.

8 120. A true and correct copy of the COLLINS First Amended Complaint is attached hereto

9 attached as Exhibit No. 3.

10 121. Plaintiffs incorporate all of the allegations made in the Second Cause of Action entitled

11 "Fraud – Intentional Misrepresentation and False Promise," the Third Cause of Action entitled

12 "Fraud – Concealment and Suppression of Fact," the Fourth Cause of Action entitled "Breach of

13 Fiduciary Duty – Contractual Duty," and the Sixth Cause of Action entitled "Breach of Fiduciary

14 Duty – Statutory Duty of a Partner," of the COLLINS First Amended Complaint as if set forth

15 verbatim herein.

16 122. As a legal result of the Defendant-Debtor's fiduciary fraud as alleged herein, Plaintiffs

17 have been damaged.

18

19 **WHEREFORE**, Plaintiffs, and each of them, request judgment against Defendant-Debtor as

20 follows:

21

22

23 1. For Plaintiffs JOHN and JANE McGUIRE, compensatory damages of $291,547.27, the

24     amount of their equity interest in R.E. Loans, LLC, Account No. MCG 015 on October 31,

25     2007, plus prejudgment interest at the legal rate;

26 2. For Plaintiffs DIXON COLLINS and KATHLEEN COLLINS, compensatory damages of

27     $146,215.00, the amount of equity interest in R.E. Loans, LLC, Account No. COL 040 on

28     October 31, 2007, plus prejudgment interest at the legal rate;

1. 3. For Plaintiff DIXON COLLINS, compensatory damages of $146,215.00, the amount of his equity interest in R.E. Loans, LLC, Account No. COL 041 on October 31, 2007, plus prejudgment interest at the legal rate;

4. For Plaintiffs LINDA GRASSI and JOHN SCOTT ALEGRIA, compensatory damages of $205,708.32, the amount of their equity interest in R.E. Loans, LLC, Account No. GRA 025 on October 31, 2007, less prepayment(s) plus prejudgment interest at the legal rate;

5. For Plaintiffs LINDA GRASSI and JOHN SCOTT ALEGRIA, compensatory damages of $1,350,000, the amount of their investment in Mortgage Fund '08 on December 3, 2007, plus prejudgment interest at the legal rate;

6. For Plaintiffs BERNARD WITTENBERG and SUZANNE WITTENBERG, compensatory damages of $285,016.43, the amount of their equity interest in R.E. Loans, LLC, Account No. WIT 010 on October 31, 2007, plus prejudgment interest at the legal rate;

7. For Plaintiffs BERNARD WITTENBERG and SUZANNE WITTENBERG, compensatory damages of $40,000.00, the amount of their investment in Mortgage Fund '08 on June 23, 2008, plus prejudgment interest at the legal rate;

8. For Plaintiff BERNARD WITTENBERG, compensatory damages of $34,638.33, the amount of his equity interest in R.E. Loans, LLC, Account No. 4WIT 012 on October 31, 2007, plus prejudgment interest at the legal rate;

9. For Plaintiff BERNARD WITTENBERG, compensatory damages of $7,500.00, the amount of his investment in Mortgage Fund '08 on June 23, 2008, plus prejudgment interest at the legal rate;

10. For Plaintiff NANCY BERGERON, compensatory damages of $224,096.54, the amount of her equity interest in R.E. Loans, LLC, Account No. BER 050 on October 31, 2007, plus prejudgment interest at the legal rate;

11. For Plaintiff NANCY BERGERON, compensatory damages of $42,000.00, the amount of her investment in Mortgage Fund '08 on or about January 1, 2008, and compensatory damages of $90,000.00, the amount of her investment in Mortgage Fund '08 on or about March 1, 2008, plus prejudgment interest at the legal rate;

12. For Plaintiff JEANNE LENGSFELDER, compensatory damages of $212,442.21, the amount of her equity interest in R.E. Loans, LLC, Account No. LEN 020 on October 31, 2007, plus prejudgment interest at the legal rate;

13. For Plaintiff JEANNE LENGSFELDER, compensatory damages of $200,000.00, the amount of her investment in Mortgage Fund '08 on or about February 1, 2008, $500,000.00, the amount of her investment in Mortgage Fund '08 on or about May 28, 2008, and $200,000.00, the amount of her investment in Mortgage Fund '08 on or about July 29, 2008, plus prejudgment interest at the legal rate;

14. For attorneys fees in an amount determined by the court to be reasonable as authorized by the contracts and/or statute;

15. For costs incurred in this action; and

16. Any other and further relief that the Court considers just or proper.


Dated: August 4, 2011


_Robert W. Brown_

Robert W. Brower
Attorney for Plaintiffs


_Ray T. Rockwell (by RWB)_

Ray T. Rockwell
Attorney for Plaintiffs